# Exhibit B

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAR 30 2017

Sherri R. Carter, Executive Officer/Clerk

By: Stacey Watson, Deputy

1 | MARC E. ROHATINER (State Bar No. 82709)
   mrohatiner@wrslawyers.com
2 | WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
   11400 West Olympic Boulevard, 9th Floor
3 | Los Angeles, California 90064-1582
   Telephone:   (310) 478-4100
4 | Facsimile:   (310) 479-1422

5 | Attorneys for plaintiff, SILVERLAKE
   PARK, LLC
6 |

7 |

8 |              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 |                 COUNTY OF LOS ANGELES, WEST DISTRICT

10 |

11 | SILVERLAKE PARK, LLC, a California       Case No.    SC127303
    limited liability company,
12 |
                Plaintiff,                   COMPLAINT FOR DAMAGES
13 |
        vs.
14 |
    STEWART TITLE GUARANTY              CASE MANAGEMENT CONFERENCE
15 | COMPANY, a Texas corporation; and
    DOES 1 through 30, inclusive,      JUL 2 8 2017    8:30 AM
16 |
                Defendants.                   Date   Dept. P
17 |
                                         Nancy Newman
18 |

19 | Plaintiff alleges:

20 |                      GENERAL ALLEGATIONS

21 |      1.      The true names or capacities, whether individual, corporate, associate,

22 | governmental or otherwise, of defendants sued herein as DOES 1 through 30, inclusive,

23 | are unknown to plaintiff at the present time and plaintiff, therefore, sues said defendants by

24 | such fictitious names; plaintiff after obtaining leave of Court, if necessary, will amend this

25 | complaint to show such true names and capacities when he has ascertained same:

26 |      2.      Plaintiff is informed and believes, and thereon alleges that defendants, and

27 | each of them, designated herein as DOES 1 through 30, inclusive, are responsible in some

28 | manner for the occurrences and happenings herein alleged, and that plaintiff's injuries and

COMPLAINT

1  damages as herein alleged were and are the direct and proximate result of the actions of

2  said defendants, and each of them.  Said defendants are sued as principals or agents,

3  partners, servants and employees of said principals, or any combination thereof, and all of

4  the acts performed by them as agents, partners, servants and employees were performed

5  within the course and scope of their employment, and with the knowledge, consent,

6  approval and ratification of said principals, and each of them.

7       3.    Plaintiff is informed and believes, and thereon alleges that at all times

8  mentioned herein, each of the defendants was the agent, employee and partner of each of

9  the remaining defendants, and was acting within the scope and authority of such agency,

10  employment and partnership and with the knowledge, consent, approval and ratification of

11  the remaining defendants, and each of them.

12       4.    All of the parties to this litigation were and are doing business in Los

13  Angeles County, California and all of the agreements referred to herein were entered into,

14  negotiated and delivered to Los Angele County, California.

15       5.    Whenever in this complaint reference is made to any act of a defendant, such

16  allegation shall be deemed to mean the acts of the defendants named in the particular cause

17  of action, and each of them, acting individually, jointly and severally.

18       6.    At all times mentioned herein, plaintiff, SILVERLAKE PARK, LLC

19  ("Plaintiff"), was and now is:

20            a.    A limited liability company organized and existing under the laws of

21  California; and,

22            b.    Maintaining its principal place of business in Los Angeles County,

23  California.

24       7.    Plaintiff is informed and believes, and thereon alleges that at all times

25  mentioned herein, defendant, STEWART TITLE GUARANTY COMPANY

26  ("Defendant") was and now a:

27            a.    A corporation organized and existing under the laws of Texas; and,

28            b.    Maintaining its principal place of business in Houston, Texas;

1          c.      Maintaining regular offices in Los Angeles, California.

2          8.      In and about January 2015, First Capital Real Estate Investments, LLC

3    ("First Capital") and VC Visions, LLC ("VCV"), entered into a written purchase and sale

4    agreement whereby First Capital was selling and VCV was purchasing seventeen hotel

5    properties (the "Agreement"). A true and correct copy of the Agreement is attached hereto

6    as Exhibit "A" and incorporated by reference.

7          9.      The hotel properties that are the subject of the purchase-sale agreement are:

8    (i) Microtel Inn & Suites (to be built), Atwater, CA; (ii) Wyndham Garden, 3100 Interstate

9    40 West, Amarillo, TX; (iii) Ramada Inn, 1539 Horseshoe Dr., Columbia, SC; (iv) Red

10   Lion, 3009 Hwy 66, Gallup, NM; (v) Red Lion, 1501 E. Santa Fe Ave., Grants, NM; (vi)

11   Red Lion, 700 Scott Ave., Farmington, NM; (vii) Best Western Plus, 2000 N. Main St.,

12   Roswell, NM; (viii) Quality Inn, 7620 Pan American Fwy., Albuquerque, NM; (ix) Red

13   Roof Inn and Suites, 4328 Frontage Rd., August, GA; (x) Baymont Inn & Suites, 629 NW

14   Frontage Rd., Augusta, GA; (xi) Wingate by Wyndham, 2123 Noland Connector, Augusta,

15   GA; (xii) Comfort Inn & Suites, 2911 Riverwest Dr., Augusta, GA; (xiii) Microtel Inn &

16   Suites, 2909 Riverwest Dr., Augusta, GA; (xiv) Quality Inn, 1455 Walton Way, Augusta,

17   GA; (xv) Econolodge, 1103 15th St., Augusta, GA; (xvi) Rodeway Inn, 2926 Peach

18   Orchard Rd., Augusta, GA; (xvii) Super 8 Motel, 3026 Washington Rd., Augusta, GA.

19   (The foregoing properties are collectively referred to as the "Hotel Properties.").

20         10.     Both First Capital and VCV maintain their principal place of business

21   California and the Agreement was entered into in Los Angeles County, California.

22         11.     Thereafter, in and about February 2015, First Capital and VCV opened

23   escrow (#15000330086) at Stewart Title to carry out the terms of the Agreement (the

24   "Escrow"). Stewart Title treated the Agreement as its escrow instructions.

25         12.     After the Escrow was opened, Plaintiff became an intended third party

26   beneficiary of the Agreement and in return for Plaintiff's contribution of approximately

27   $13,000,000.00 ("Plaintiff's Funds") at the closing Plaintiff was to obtain a fifty percent

28   ownership interest in the Hotel Properties.

## FIRST CAUSE OF ACTION

### (Breach of Fiduciary Duty As Against All Defendants)

13.    Plaintiff refers to and incorporates paragraphs 1 through 12, inclusive, of the Complaint.

14.    On or about March 2, 2015, Stewart Title was provided an addendum to the Agreement signed by First Capital and VCV which provided, among other things, that at the time of closing, Plaintiff's assignor, Dromy International,  would hold a fifty percent ownership interest in the Hotel Properties.   A true and correct copy of the addendum is attached hereto as Exhibit "B" and incorporated by reference.  Notwithstanding the reference in the addendum to moving the Escrow to another company that did not occur.

15.    Dromy International subsequently assigned its interest in the transaction to Plaintiff and Stewart Title was aware of that assignment before making any of the disbursements discussed below.

16.    In its capacity as escrow holder for the contemplated transaction,  Stewart Title knowingly accepted deposits of Plaintiff's Funds from Plaintiff's related company and assignor, Dromy International Investment Corp. ("Dromy International") or principals of both companies .  Stewart Title was informed that Plaintiff's Funds were to be used as consideration for the purchase of Plaintiff's interest in the Hotel Properties.

17.    Ultimately, beginning in March 2015 through May 2015, based on instructions from First Capital and VCV, Stewart Title released all of Plaintiff's Funds to Frist Capital, VCV and other parties without Plaintiff's knowledge or consent and without Plaintiff acquiring any interest whatsoever in the Hotel Properties.

18.    At the time Stewart Title released all of Plaintiff's Funds Stewart Title was aware of the following:

   a.    No instrument transferring any interest in the Hotel Properties to Plaintiff or anyone else had been deposited with the Escrow;

   b.    Several million dollars was being released to parties that had no apparent interest in the Hotel Properties or in the transaction;

2631301.1

-4-
COMMPLAINT

EXHIBIT B PAGE 6

1        c.     Plaintiff or parties related to Plaintiff were the sole source of

2  Plaintiff's Funds;

3        d.     Under the contemplated transaction, at the closing, Plaintiff or its

4  assignor was to acquire a fifty percent interest in the Hotel Properties which meant that

5  Plaintiff was a party to the escrow;

6        e.     Plaintiff had not communicated its agreement to release of all or any

7  portion of Plaintiff's funds;

8        f.     First Capital and VCV were consciously attempting to hide form

9  Plaintiff what was actually occurring in the Escrow;

10        g.     Plaintiff was not receiving any benefit in return for the release of

11  Plaintiff's Funds; and,

12        h.     Before releasing Plaintiff's Funds, no one at Stewart Title had

13  attempted to verify that Plaintiff approved of the release of Plaintiff's Funds without

14  Plaintiff acquiring a fifty percent interest in the Hotel Properties.

15      19.    By reason of the foregoing, Stewart Title owed Plaintiff a fiduciary duty to

16  act with the utmost good faith in Plaintiff's best interest.

17      20.    In light of the surrounding circumstances alleged herein, in releasing

18  Plaintiff's Funds without authority from Plaintiff, without verifying that Plaintiff approved

19  of the release or without notifying Plaintiff of Stewart Title's intended action, Stewart

20  Title breached its fiduciary duty owed to Plaintiff.

21      21.    To date Plaintiff has received no consideration in return for its deposit of

22  Plaintiff's Funds and Plaintiff has not been repaid any portion of Plaintiff's Funds.

23  Stewart Title's conduct was a substantial factor in causing Plaintiff's harm.

24      22.    By reason of the foregoing, Plaintiff has sustained general, special,

25  consequential and incidental damages of at least $13,000,000.00. The exact amount has

26  not yet been ascertained and will be established according to proof at time of trial.

27  ///

28  ///

EXHIBIT B PAGE 7

**SECOND CAUSE OF ACTION**

**(Negligence As Against All Defendants)**

23.   Plaintiff refers to and incorporates paragraphs 1 through 22, inclusive, of the Complaint.

24.   In assuming the role of escrow holder in this transaction, Stewart Title owed Plaintiff the duty to act consistent with the manner a reasonably careful and prudent escrow holder would have acted under the same or similar circumstances.

25.   By reason of the forgoing Stewart Title discharged its duties negligently to Plaintiff's damage.

WHEREFORE, Plaintiff prays for judgment as follows:

First Cause of Action

1.   For general, special, consequential and incidental damages of not less than $13,000,000.00, according to proof.

2.   For costs of suit incurred herein; and,

3.   For such other relief as the Court deems proper and just.

Second Cause of Action

1.   For general, special, consequential and incidental damages of not less than $13,000,000.00, according to proof.

2.   For costs of suit incurred herein; and,

3.   For such other relief as the Court deems proper and just.

DATED: March 29, 2017          WOLF, RIFKIN, SHAPIRO,
                               SCHULMAN & RABKIN, LLP


                               By:
                               MARC E. ROHATINER
                               Attorneys for plaintiff, SILVERLAKE PARK, LLC

2631301.1

-6-

COMPLAINT

# EXHIBIT A

PURCHASE AND SALE AGREEMENT

BETWEEN

FIRST CAPITAL REAL ESTATE INVESTMENTS, LLC [AND
OTHER SELLERS TO BE IDENTIFIED]

AS SELLER,

and

VC VISIONS, LLC, A DELAWARE LIMITED LIABILITY
COMPANY

AS BUYER

1392794.6

50

000002875

EXHIBIT B PAGE 10

**Purchase and Sale Agreement**

THIS PURCHASE AND SALE AGREEMENT (this "Agreement"), dated solely for reference purposes as of December _____, 2014, is made by and between First Capital Real Estate Investments, LLC *[and other Sellers to be identified]* (collectively, "Seller") and VC Visions, LLC, a Delaware limited liability company (or assignee subject to the provisions of Section 13 below) ("Buyer"). This Agreement shall not be effective until executed by both Buyer and Seller, and the date on which this Agreement is executed by Buyer or Seller, whichever is later, as indicated on the signature page hereto, shall be referred to herein as the "Effective Date."

1. **PURCHASE AND SALE.** Seller hereby agrees to sell to Buyer, and Buyer hereby agrees to purchase from Seller, subject to the terms, covenants and conditions set forth herein, all of the following property:

(a) That certain land upon which the Improvements (defined below) are located as more particularly described on *Exhibit A-1* hereto (the "Land");

(b) The building, structures and other improvements erected or located on the Land, but excluding the Excluded Property (as defined in Section 15.21 below) (collectively, the "Improvements," and together with the Land, collectively, the "Premises") commonly described on *Exhibit A-2 hereto*;

(c) All of Seller's right, title and interest, if any, in and to any rights and appurtenances pertaining to the Land, including minerals, oil and gas rights, air, water and development rights, roads, alleys, easements, streets and ways adjacent to the Land (the "Appurtenant Rights"); and

(d) All of Seller's right, title, and interest in those agreements affecting the Property that Buyer is required to assume pursuant to Section 3.5 below (collectively, the "Miscellaneous Agreements").

The Premises, the Appurtenant Rights, and the Miscellaneous Agreements are herein collectively referred to as the "Property".

2. **PURCHASE PRICE; DEPOSIT; ESCROW**

(a) The purchase price ("Purchase Price") for the Property shall be One Hundred and One Million Dollars ($101,000,000.00), subject to adjustment as provided in Section 8 below, and shall be paid as set forth in this Section 2.

(b) Within ten (10) days following the Effective Date, Buyer shall deposit in escrow with Stewart Title Company, Attention: ~~Sally y. Harr~~ (the "Escrow Holder"), as an initial deposit hereunder, the sum of Two Hundred Thousand Dollars ($200,000.00) (the "Initial Deposit"). Notwithstanding any provision contained herein to the contrary, failure to make the Initial Deposit within said 10-day period may be treated as an incurable default by Seller and, if so, Seller shall be entitled to terminate this Agreement upon written notice thereof to Buyer. The Initial Deposit shall be invested by Escrow Holder in a

*[handwritten] Note: Stewart Title Company, Attn: Joey _____ (Title)*

000002876

3.    **BUYER'S INVESTIGATION; LEASE**

3.1    *Scope of Investigation.* Buyer shall have the period commencing on the Effective Date and ending on March 15 2015 (the "Investigation Period") to review and approve all matters relating to the Property, including the following matters:

(a)    All matters relating to title to the Property, including (i) matters disclosed by those certain Preliminary Reports dated _To Be complete_ respectively, or by any underlying exception document referred to therein (collectively, the "Title Report") issued by Stewart Title Company (the "Title Company") under Order Nos. _To Be complete_ (of which Buyer hereby acknowledges receipt, or disclosed by any updates thereof or supplements thereto; and (ii) matters disclosed by any survey of the Property. Buyer may obtain, at Buyer's sole cost and expense, an ALTA survey of the Properties, in form sufficient to satisfy the requirements of the Title Company for the issuance of an ALTA owner's extended coverage policy of title insurance, and a copy of which, as well as copies of any updates thereof or supplements thereto, shall be provided by Buyer to Seller (at no expense to Seller) promptly upon Buyer's receipt thereof. Buyer's receipt of ALTA extended coverage title insurance shall not constitute a condition to Closing for the benefit of Buyer under this Agreement.

(b)    All matters relating to any governmental and other legal requirements relating to the Property, such as taxes, assessments, zoning, use permit requirements and building codes, including any certificates of occupancy, other governmental permits and plans and specifications for the Property. (Notwithstanding any provisions of this Agreement to the contrary, Buyer shall not file or cause to be filed any application or make any request (other than inquiries of the public records) with any governmental or quasi-governmental agency which would or could lead to a hearing before any governmental or quasi-governmental agency or which would or could lead to a note, notice of violation of law or municipal ordinance, order or requirement imposed by such an agency, at the Property or any change in zoning, parcelization, licenses, permits or other entitlements or any investigation or restriction on the use of the Property, or any part thereof.

(c)    The physical condition of the Property, including the interiors, exteriors, structures, pavements, utilities, and all other physical and functional aspects of the Property, and including an investigation as to the presence of Hazardous Materials (as defined in Section 4.1(b) below) on, on or under the Property and the compliance of the Property with all Hazardous Materials Laws (as defined in Section 4.1(b) below).

(d)    Any easements and/or access rights affecting the Property.

(e)    The written materials relating to the Property previously provided to Buyer enumerated in *Exhibit B* attached hereto and by this reference incorporated herein (the "Due Diligence Materials"). Buyer acknowledges and agrees that the Due Diligence Materials have been provided to Buyer subject to the limitations and disclaimers set forth in Sections 4.1 and 4.3(f) below.

3

000002877

**EXHIBIT B PAGE 12**

(f)    All matters relating to the feasibility of Buyer's proposed ownership of the Property.

(g)    Natural hazards disclosure statements for the Property, to the extent required under California law, to be delivered to Buyer after the Effective Date. The natural hazards disclosure statements shall be based on a report or reports of a licensed engineer, land surveyor, geologist, or expert in natural hazard discovery, which report or reports shall be attached to such natural hazards disclosure statement. Buyer acknowledges that the natural hazards disclosure statements shall be based solely on the information contained in the report or reports attached thereto, and Seller shall have no liability for any inaccuracy in such reports, except to the extent that Seller has actual knowledge of the inaccuracy at the time the corresponding natural hazards disclosure statement is signed by Seller.

**3.2    *Entry; Insurance; Indemnity***

(a)    Pursuant to the Access Agreement (the "**Access Agreement**") attached hereto as *Exhibit C*, Buyer shall have the right, in compliance with the requirements of the Access Agreement and this Section 3.2, to enter on any portion of the Premises for the limited purpose of conducting "Inspections" (as defined in the Access Agreement). Buyer shall conduct such entries and any Inspections in connection therewith so as to minimize disruption at the Property or interference with the business of Seller or the current occupants of the Premises and otherwise in a manner reasonably acceptable to Seller.

(b)    Buyer's indemnification of Seller pursuant to the Access Agreement shall extend to the shareholders, directors and officers of Seller, any party owning a direct or indirect interest in Seller, the affiliates of Seller, and the shareholders, directors, officers, employees, tenants, licensees, contractors, representatives and agents of each of the foregoing parties (collectively, the "**Seller-Related Parties**").

**3.3    *Title Matters; Buyer's Objections; Seller's Right to Cure***

(a)    *Disapproved Matters.*

(i)    For the period commencing on the Effective Date and ending on February 15, 2015 (the "**Title Review Period**") Buyer shall have the right, by written notice to Seller (a "**Disapproval Notice**"), to disapprove any matter relating to title of the Property.

(ii)    If any material matter relating to title of the Property first arises after the expiration of the Title Review Period, and is not created or caused by Buyer, then Buyer shall have the right to disapprove such matter by delivering a Disapproval Notice to Seller within five (5) days after Buyer first becomes aware of such matter.

(iii)    All matters relating to title to the Property to which Buyer objects pursuant to Section 3.3(a)(i) or 3.3(a)(ii) above shall be referred to as "**Disapproved Matters**." All matters relating to title to the Property which are not Disapproved Matters shall be deemed approved by Buyer.

4

000002878

indemnification set forth in Sections 4.2(a) and 4.2(b) have been negotiated and agreed upon in light of that realization and that Buyer nevertheless hereby intends to release, discharge and acquit the Seller-Related Parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses and expenses, except for any liability of Seller for any breach of any representation or warranty set forth in Section 4.3 below, which liability shall survive the Closing only for the Survival Period and shall be subject to the limitation on liability set forth in Section 4.5 below. In connection with the release set forth in Section 4.2(a) above, Buyer expressly waives the benefits of Section 1542 of the California Civil Code which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR EXPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN TO HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

BUYER'S INITIALS: _____

    (d)    The provisions of this Section 4.2 shall survive the Closing.

    4.3    *Representations and Warranties of Seller.*  Seller represents and warrants to Buyer as follows:

    (a)    Seller is a corporation, duly organized, and validly existing under the laws of California, and qualified to transact business and in good standing in the State of California.

    (b)    Subject to the terms of Section 6.2(e) below, Seller has the power and authority to enter into this Agreement and convey the Property to Buyer and to execute and deliver the other documents referred to herein and to perform hereunder and thereunder on behalf of Seller.

    (c)    Neither the execution and delivery of this Agreement, the consummation of the transactions contemplated by this Agreement, nor the compliance with the terms and conditions hereof will violate, in any material respect, any statute, regulation, rule, injunction, judgment, order, decree, ruling, charge, or other restrictions of any government, governmental agency or court to which Seller is subject.

    (d)    To Seller's knowledge, Seller is not required to obtain the consent or approval of any government agency, department or other government body to enter into this Agreement or if required, any such required consents or approvals have been obtained.

    (e)    There are no general assignments for the benefit of creditors, or voluntary or involuntary proceedings in bankruptcy, existing, pending or, to Seller's knowledge, threatened against Seller.

    (f)    To Seller's knowledge, the Due Diligence Materials made available to Buyer for its review pursuant to Section 3.1(e) above, constitute all written materials

000002879

INITIALS BELOW, EACH PARTY SPECIFICALLY CONFIRMS THE ACCURACY OF THE STATEMENTS MADE ABOVE, THE REASONABLENESS OF THE AMOUNT OF LIQUIDATED DAMAGES AGREED UPON, AND THE FACT THAT EACH PARTY WAS REPRESENTED BY COUNSEL WHO EXPLAINED, AT THE TIME THIS AGREEMENT WAS MADE, THE CONSEQUENCES OF THIS LIQUIDATED DAMAGES PROVISION. *[CALIFORNIA ONLY]*

INITIALS: _____   _____
                Seller        Buyer

(b)    *Seller's Default.*  If the Closing does not occur as a result of Seller's default hereunder following the expiration of ten (10) day's prior written notice and opportunity to cure, then, provided Buyer is not in default hereunder, Buyer may, at its sole election, proceed with one of the following mutually exclusive alternatives:

(i)    waive such default and proceed with the Closing with no reduction in the Purchase Price; provided, however, that this provision will not waive or affect any of Seller's other obligations under this Agreement to be performed after the Closing with respect to any matter other than such default;

(ii)    terminate this Agreement, whereupon the Deposit shall be returned and paid to Buyer, and neither party shall have any further liability or obligation to the other hereunder, except for provisions of this Agreement which expressly state that they shall survive the termination of this Agreement; or

(iii)    file in any court of competent jurisdiction an action for specific performance to cause Seller to convey the Property to Buyer pursuant to the terms and conditions of this Agreement; but Buyer shall not be entitled to recover monetary damages from Seller in connection with such default; provided, however, that this provision will not limit Buyer's right to receive reimbursement for attorneys' fees pursuant to Section 15.1 below, nor waive or affect any of Seller's other obligations under this Agreement to be performed after the Closing with respect to any matter other than such default.

11.    **EXPENSES**

(a)    Any city, county or other local real estate transfer taxes and conveyance taxes shall be paid by Seller.

(b)    All recording fees shall paid by Buyer (with the exception of any recording fees required for the Memorandum of Lease or for the release of any lien or other encumbrance to be provided by Seller hereunder, which recording fees shall be paid by Seller).

(c)    All Escrow and Closing costs charged by the Escrow Holder, and any investment charges or escrow fees incurred with respect to the Escrow shall be borne and paid by Buyer.

22

000002880

(d)     Each party shall pay one-half of any Escrow cancellation fee charged by Title Company in connection with the purchase and sale of the Property in accordance with this Agreement.

(e)     The cost of the Title Policy (including the cost of ALTA extended coverage and the cost of all endorsements) shall be paid by Buyer.

(f)     The cost of the Leasehold Policy (including the cost of all endorsements) shall be paid by Seller.

(g)     Buyer shall pay its due diligence expenses (including, but not limited to, the cost of any survey obtained by Buyer), and each party shall pay its own attorneys' fees in connection with the negotiation, documentation and consummation of the transactions contemplated hereunder.

(h)     Other costs, charges, and expenses shall be borne and paid as provided in this Agreement, or in the absence of such provision, in accordance with the custom in the City and County of Sacramento.

**12.     BROKERS**

(a)     Seller represents to Buyer, and Buyer represents to Seller that (except for Susan McShannock (Broker, contemplated to receive a commission of one (1%) percent of the Purchase Price and Alpine Realty, contemplated to receive a commission three (3%) of the Purchase Price, both conditioned upon Closing) ["Seller's Broker"], whose commission will be paid by Seller pursuant to the terms of a separate agreement between Seller's Broker and Seller, and Mark J. Mimms Broker, Sperry Van Ness and Associates contemplated to receive a commission of one (1%) percent of the Purchase Price conditioned upon Closing) ["Buyer's Broker"], whose commission will be paid by Seller pursuant to the terms of a separate agreement between Buyer and Buyer's Broker) (Seller's Broker and Buyer's Broker are sometimes collectively referred to in this Agreement as the "Brokers"); there is no broker, finder, or intermediary of any kind with whom such party has dealt in connection with this transaction.

(b)     Seller agrees to indemnify and hold harmless Buyer, the partners, members, trustees, shareholders, directors and officers of Buyer, any party owning a direct or indirect interest in Buyer, the affiliates of Buyer, and the partners, members, trustees, shareholders, directors, officers, employees and agents of each of the foregoing parties (the "Buyer-Related Parties"), from and against all claims, demands, causes of action, judgments, and liabilities which may be asserted or recovered for brokerage or finder's fees, commissions, or other compensation in connection with the transaction contemplated under this Agreement claimed by any party other than Seller's Broker or Buyer's Broker to be owing to such party due to any dealings between Seller and the party claiming such fee, commission or compensation, including costs and reasonable attorneys' fees incident thereto. Buyer agrees to indemnify and hold harmless the Seller-Related Parties, from and against all claims, demands, causes of action, judgments, and liabilities which may be asserted or recovered for brokerage or finder's fees, commissions, or other compensation in connection with the transaction contemplated under this

000002881

**EXHIBIT B PAGE 16**

PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT. EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION IT MAY NOW OR HEREAFTER HAVE TO SUCH VENUE AS BEING AN INCONVENIENT FORUM.

15.20  *Waiver of Jury Trial.*  THE PARTIES HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVE ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION HEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY THE PARTIES, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.  EACH PARTY IS HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY EACH OTHER PARTY. AS APPLICABLE.

15.21  *Excluded Property.* Buyer agrees that Seller shall have the right, in Seller's sole and absolute discretion, to remove some or all of the items enumerated in *Exhibit L* attached hereto not later than the expiration of the term of the Lease, and to the extent that such items are removed, they shall be deemed to be "Excluded Property" and shall remain the property of Seller and will not be part of the Property to be conveyed to Buyer. If Seller elects to undertake such removal, it shall be performed in compliance with the terms of Section 16 of the Lease. Buyer agrees that the Excluded Property may include components that constitute "fixtures" under applicable law and may be permanently attached to the Improvements, but nonetheless agrees that the terms of this Section 15.21 shall govern the parties' respective rights with regard to the Excluded Property irrespective of any contrary law or any provision of this Agreement or the Lease to the contrary. The terms of this Section 15.21 shall survive the Closing.

[NEXT PAGE IS SIGNATURE PAGE]

30

000002882

**EXHIBIT B PAGE 17**

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written. *SET FORTH NEXT TO THEIR RESPECTIVE SIGNATURES BELOW.*

**BUYER:**

VC Visions. LLC.
a Delaware Limited Liability Company

By: _____    01/19/2015
Name: _____
Title: _____

By: _____
Name: _____
Title: _____

**SELLER:**

First Capital Real Estate Investments, LLC,
a California Limited Liability Company

By: _____
Name: _____ *Suneet Singal*
Title: _____ *Managing Member*    1/9/15

By: _____
Name: _____
Title: _____

31

000002883

**EXHIBIT B PAGE 18**

# EXHIBIT B

1/4/2015

Addendum to Purchase Agreement of 17-Hotels from FCREI

to VC Visions, LLC and Saper, Inc. Dated March 2, 2015

This Addendum is to that certain Confidential and Privileged Information Memorandum dated March 2, 2015 from First Capital Real Estate Investments. LLC to VC Visions, LLC and Saper, Inc.

The parties agree to the following:

1    Escrow shall be moved to and held at American Trust Escrow and Title shall remain at Stewart Title Company;

2    Fees of $2,375,000 are to be paid to VC Visions, LLC and/or its assign, and $2,125,000 are to be paid to Saper Inc.; and the sum of $250,000 from Dromy International Investment Corp shall be paid to Saper Inc. directly; and

3    Title to be vested as follows: 50% to Dromy International Investment Corp. and/or assign; 25% First Capital Real Estate Investments, LLC; 12.5% to VC Visions, LLC and/or its assign and 12.5% to Saper Inc.

All other terms and conditions shall the remain the same.

Acknowledged, agreed to and accepted this 2nd day of March 2015:

First Capital Real Estate Investments; LLC

By

Authorized Signatory

VC Visions, LLC

By

Authorized Signatory

Saper, Inc.

By

Authorized Signatory

Page 1 of 1



000002616

**EXHIBIT B PAGE 20**

LASC - SANTA MONICA
1725 MAIN STREET
SANTA MONICA CA 90401

DATE PAID: 03/30/17   09:15 AM
RECEIPT #: SM542390008

CIT/CASE: SC127303
LEA/DEF#:

PAYMENT:     $435.00              310
RECEIVED:
    CHECK:                      $435.00
    CASH:                         $0.00
    CHANGE:                       $0.00
    CARD:                         $0.00