UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:17-cv-03291-CAS-AGRx | Date | October 1, 2024 |
|---|---|---|---|
| Title | Silverlake Park LLC v. Stewart Title Guaranty Company | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:     Attorneys Present for Defendants:

Not Present     Not Present

**Proceedings:** (IN CHAMBERS) - DEFENDANT STEWART TITLE GUARANTY COMPANY'S MOTION FOR SUMMARY JUDGMENT (Dkt. 169, filed on July 29, 2024)

## I. INTRODUCTION & BACKGROUND

On March 30, 2017, plaintiff Silverlake Park, LLC ("Silverlake" or "plaintiff") filed a complaint against defendant Stewart Title Guaranty Company ("Stewart" or "defendant") in the Superior Court for the County of Los Angeles. Dkt. 1-3. On May 2, 2017, defendant removed the action to this Court. Dkt. 1. Plaintiff alleges claims for breach of fiduciary duty and negligence. Dkt. 26 at 6-8. Plaintiff alleges that it invested approximately $13,300,000 in a real estate transaction that were deposited on its behalf with Stewart acting as the escrow holder, but defendant, in its capacity as escrow holder, impermissibly released those funds to other parties. Dkt. 176 ¶ 9; 71. Plaintiff alleges that those parties participated in a fraudulent scheme to obtain plaintiff's funds that was facilitated by the escrow arrangement. Id. ¶ 82-102.

The history and facts of this case are well-known to the parties and set forth in the Court's October 2, 2017, order. See dkt. 38.

On July 29, 2024, defendant filed the instant motion for summary judgment, dkt. 169, as well as supporting declarations in dkts. 170-171. Defendant concurrently filed a statement of uncontroverted facts. Dkt. 172.

On August 19, 2024, plaintiff filed an opposition and response to defendant's statement of uncontroverted facts, including an additional statement of facts. Dkt. 175-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                    'O'

| Case No. | 2:17-cv-03291-CAS-AGRx | Date | October 1, 2024 |
|---|---|---|---|
| Title | Silverlake Park LLC v. Stewart Title Guaranty Company | | |

176. On August 26, 2024, defendant filed a reply. Dkt. 177. It concurrently filed a reply to plaintiff's statement in response to defendant's statement of uncontroverted facts. Dkt. 178. Defendant did not respond to plaintiff's additional statement of facts, claiming it was improper under L.R. 56-2. On August 28, 2024, the Court directed defendant to file a further response addressing plaintiff's additional statement of facts. Dkt. 179. On September 6, 2024, defendant filed a response to plaintiff's additional statement of facts. Dkt. 180.

On September 23, 2024, the Court held a hearing on the motion. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

**II.    LEGAL STANDARD**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:17-cv-03291-CAS-AGRx | Date | October 1, 2024 |
|---|---|---|---|
| Title | Silverlake Park LLC v. Stewart Title Guaranty Company | | |

favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

### III. DISCUSSION

Stewart and Silverlake do not dispute that the Purchase and Sale Agreement governed the parties' rights and obligations under the real estate transaction at issue. Dkt. 171-1, Ex. 1 at 17. On January 9, 2015, Suneet Singal, the principal of First Capital Real Estate Investments, LLC ("First Capital"), and Joseph Guglielmo, the principal of VC Visions, LLC ("VCV") signed the Purchase and Sale Agreement. Dkt. 178 ¶ 1. In the transaction, First Capital agreed to sell 17 hotel properties to VCV for $101 million. Id. ¶ 19; Dkt. 178-1 at 5. The Purchase and Sale Agreement states:

> THIS PURCHASE AND SALE AGREEMENT (this 'Agreement') is made by and between First Capital Real Estate Investments, LLC [and other Sellers to be identified] (collectively, 'Seller') and VC Visions, LLC, a Delaware limited liability company (or assignee subject to the provisions of Section 13 below) ('Buyer').

Dkt. 178 ¶ 2 (emphasis omitted). Section 2 of the Purchase and Sale Agreement states:

> This Agreement shall serve as the initial escrow instructions. Counsel for Buyer and Seller are hereby authorized to execute any further escrow instructions necessary or desirable, and consistent with the terms hereof, in connection with the escrow established for this transaction by the Escrow Holder.

Id. ¶ 3. Section 13 of the Purchase and Sale Agreement states:

> ASSIGNMENT. Original Buyer may, upon written notice to Seller given not later than ten (10) days before the Closing, assign its right to purchase the Property hereunder to any other entity that is (and as of the Closing shall continue to be) (i) controlled by Original Buyer (and, if such entity is a partnership or limited liability company, Original Buyer shall be sole managing member of such limited liability

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:17-cv-03291-CAS-AGRx | Date | October 1, 2024 |
|---|---|---|---|
| Title | Silverlake Park LLC v. Stewart Title Guaranty Company | | |

company, as the case may be) and (ii) an entity in which Original Buyer shall own, directly or indirectly, more than fifty percent (50%) of each class of stock or other equity interest, provided that such entity shall assume all obligations of Buyer hereunder in a written agreement reasonably acceptable to Seller, including, specifically, reaffirmation of the release and indemnification set forth in Section 4.2 above. Except in compliance with the preceding sentence, Buyer may not assign this Agreement to any other party without Seller's prior written consent, which consent may be granted, conditioned or denied in Seller's sole and absolute discretion.

Id. ¶ 4. Section 15.13 of the Purchase and Sale Agreement states: "This Agreement may be amended or modified only by a written agreement subsequently executed by Buyer and Seller." Dkt. 171, Ex. 1 at 45.

Section 15.15 of the Purchase and Sale Agreement states:

No Third Party Beneficiary. The provisions of this Agreement and of the documents to be executed and delivered at Closing are and will be for the benefit of Seller and Buyer only and are not for the benefit of any third party (including, without limitation, the Title Company and the Brokers), and accordingly, no third party shall have the right to enforce the provisions of this Agreement or of the documents to be executed and delivered at Closing.

Dkt. 178 ¶ 9 (emphasis omitted).

Stewart was named and appointed in the Purchase and Sale Agreement as the "escrow holder," and, among other things, was responsible to effectuate the purchase and sale transaction by delivering the funds deposited with it to the Seller in exchange for the documents of title at the closing. Dkt. 171, Ex. 1 at 17-18. All of the funds deposited with Stewart came from persons and entities affiliated with Silverlake ($9,500,000 from the Dromys; $1,510,000 from the Dromy Family Trust; $1,809,070.76 from Peak 1031 Exchange, Inc.; and $500,000 from Sherr, LLC, which plaintiff alleges was deposited on Silverlake's behalf). Dkt. 176 ¶ 9; dkt. 175-1, Ex. D. However, no closing ever occurred. Dkt. 176 ¶ 97. Stewart nonetheless disbursed all of the funds to the various parties, including entities not named in the Purchase and Sale Agreement. Id. ¶ 82-83; dkt. 175-1, Ex. D

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:17-cv-03291-CAS-AGRx | Date | October 1, 2024 |
|---|---|---|---|
| Title | Silverlake Park LLC v. Stewart Title Guaranty Company | | |

Stewart argues, among other things, that it is entitled to summary judgment because (1) it did not owe a fiduciary duty to Silverlake because Silverlake was not a party to the Purchase and Sale Agreement; (2) it did not owe additional duties to Silverlake because it was not aware of "clear evidence of fraud"; and (3) it was not negligent. Dkt. 169 at 11; 14; 17.

The Court finds that the record demonstrates that there are genuine disputes of material facts on each of these issues. See Fed. R. Civ. P. 56(a) (summary judgment is only appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"). The Court finds that the following issues of material fact are subject to genuine dispute, and prevent the granting of summary judgment:

a. There are fact issues as to whether Silverlake, by agreement of the original Buyer, VCV, and the Seller, First Capital, became a party to the Purchase and Sale Agreement and whether Stewart was made aware of Silverlake's role as a party to that agreement. In this regard, documents evidently approved by VCV and First Capital designated the Dromys' entity, Silverlake, and its affiliates as having an ownership interest in the properties to be sold. Dkt. 175-1, Ex. J. Stewart also knew facts that showed at least $11,010,000 of the funds deposited into escrow ($9,500,000 from the Dromys and $1,510,000 from the Dromy Family Trust) came from the Dromys. Dkt. 175, Ex. D.

b. The Purchase and Sale Agreement provided that the "Buyer" shall deposit into escrow with Stewart an initial deposit of $200,000. Dkt. 171-1, Ex. 1 at 5. This initial deposit was made by the Dromys on February 6, 2015. Dkt. 176 ¶ 16; dkt. 175, Ex. D. Sandy Hale ("Hale"), Stewart's officer assigned to manage the escrow account, received a wire transfer notification on February 6, 2015. Dkt. 176 ¶ 59. It states that the transferors of the funds were Ely and Judy Dromy and was accompanied by this message: "if escrow cancelled deposit to be refunded to sender." Dkt. 171, Ex. 6. Hale prepared a ledger which listed this deposit and at least eight other deposits from parties with the name "Dromy." Dkt. 176 ¶ 53; dkt. 175-1, Ex. D. Hale testified that she was not aware of the Dromys and did not know the source of the funds deposited into escrow, despite the information she possessed showing that the Dromys were the source of the funds. Dkt. 180 at 8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:17-cv-03291-CAS-AGRx | Date | October 1, 2024 |
|---|---|---|---|
| Title | Silverlake Park LLC v. Stewart Title Guaranty Company | | |

c. There are fact issues regarding Stewart's knowledge of the role and economic interest of the Dromys. The Purchase and Sale Agreement states that it "may be amended or modified only by a written agreement subsequently executed by Buyer and Seller." Dkt. 171, Ex. 1 at 45. Defendant argues that it was never formally amended in writing to make DIICO or Silverlake a "Buyer." Dkt. 178 ¶ 6. However, the March 2, 2015 Addendum ("March 2 Addendum") is a written agreement, executed by VCV, First Capital, and Saper Inc. ("Saper"), stating: "Title to be vested as follows: 50% to Dromy International Investment Corporation ("DIICO") and/or assign." Dkt. 175-1, Ex. H. Hale received the March 2 Addendum. Dkt. 176 ¶ 65. There is a fact question as to whether this writing sufficed to make DIICO and/or its assign a "Buyer" under the terms of the Purchase and Sale Agreement.

d. There are fact issues regarding other portions of the March 2 Addendum and whether they were sufficient to put Stewart on notice that a fraud was taking place. First, it states that it is between First Capital, VCV, and Saper (a company owned by Rone Oren, a broker retained by the Dromys to represent their interests in the transaction). Dkt. 175-1, Ex. H; dkt. 178 ¶ 17. It calls for fees to be paid to VCV and Saper, and for $250,000 to be paid directly from DIICO to Saper. Dkt. 175-1, Ex. H. Additionally, it states: "Escrow shall be moved to and held at American Trust Escrow and Title shall remain at Stewart Title Company." Id. These provisions give rise to questions about Stewart's knowledge that a fraud was taking place, specifically as to: why Oren and Saper, who were not parties to the Purchase and Sale Agreement, would have any right to direct the funds held in escrow; the provisions for the payment of "fees," despite the fact that the Purchase and Sale Agreement named other parties as brokers who might be entitled to compensation, but only upon the closing (see dkt. 171, Ex. 1 at 39); the status of the escrow, which was apparently to be moved to another escrow company; and that title was supposed to "remain" at Stewart and not be transferred, leaving unexplained how Stewart could effectuate the closing. Dkt. 176 ¶ 96-98.

e. There are fact issues regarding Stewart's knowledge of Silverlake's role and interest in the purchase and sale transaction. The March 24, 2015 Agreement ("March 24 Agreement"), which Hale received in a March 26 email from Joseph Guglielmo of VCV, states: "Upon the transfer of all 17 Hotels Title to the ownership of: 50% to Silverlake Pard." Dkt. 175-1, Ex. J. The March 24

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    'O'

| Case No. | 2:17-cv-03291-CAS-AGRx | Date | October 1, 2024 |
|---|---|---|---|
| Title | Silverlake Park LLC v. Stewart Title Guaranty Company | | |

Agreement is signed only by First Capital, but it was attached to an email sent by the principal of VCV stating: "The parties have reviewed the documentation and are all ready to proceed with the attached Addendum and Escrow Authorization and Agreement. Please send out the funds today as previously instructed in accordance with the attached documentation." Id. Hale admitted receiving the March 24 Agreement, but Stewart disputes knowing that Silverlake had an interest in the escrow funds or that it was aware of Silverlake's role in the transaction. Dkt. 180 at 5-6.

f. There are fact issues regarding whether other portions of the March 24 Agreement were sufficient to place Stewart on notice that a fraud was taking place. There is a signature line for Rasbe Inc. ("Rasbe"), another company owned by Oren, but Oren did not sign the document. Dkt. 175-1, Ex. J. Stewart is misspelled as "Steward." Id. Silverlake Park is misspelled as "Silverlake Pard." Id. The document describes an agreement between Rasbe and First Capital, but it is not explained why Rasbe would have the right to direct the disposition of any escrowed funds, as it was not a party to the Purchase and Sale Agreement or the escrow. Id. Additionally, in the first point of the March 24 Agreement, Rasbe assigned a $1,100,000 note to First Capital, while in the second point of the agreement, First Capital authorized a $1,000,000 wire transfer to Rasbe. Id. The third point of the agreement then states: "[First Capital] to void AND CANCEL the assignment of [Rasbe] $1,100,000 Dollars Note and [Rasbe] to pay [First Capital] $1,000,000 Dollars." Id. The transactions appear to be contradictory. If the note was owed by some unspecified person to Rasbe, it is unexplained why the cancellation of that note would benefit First Capital, much less why First Capital would compensate Rasbe out of escrow funds deposited by the Dromys or why this payment to Rasbe would effectuate the sale that was the subject of the Purchase and Sale Agreement. The Court finds that a reasonable jury could determine that an experienced escrow officer for a property transaction worth $101 million would be placed on notice of fraud by these documents.

g. There are fact issues regarding the instructions given for the disbursement of funds: the Purchase and Sale Agreement contemplated a transfer of title and disbursement of funds held in escrow only at the closing. Dkt. 171, Ex. 1 at 17-18. On March 27, 2015, Hale was aware that VCV was asking for the funds to be disbursed, which were "required to close the transaction." Dkt. 176 ¶ 93. Hale

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'

| | | | |
|---|---|---|---|
| Case No. | 2:17-cv-03291-CAS-AGRx | Date | October 1, 2024 |
| Title | Silverlake Park LLC v. Stewart Title Guaranty Company | | |

nonetheless disbursed the funds ostensibly relying on instructions dated March 31, 2015, prior to any closing, which did not call for the transfer of title. Id. ¶ 82; dkt. 175-1, Ex. M. When the funds were disbursed, Hale was under the impression that there would be a closing in the future, and understood that a closing would occur via the deposit of grant deeds by First Capital. Dkt. 176 ¶ 94-95. However, grant deeds were never deposited in escrow, Hale did not inquire about them, and the escrow never closed. Id. ¶ 96-97. Hale does not know what ultimately happened to the escrow, and presumably, the deeds to the properties that were supposed to be deposited into the escrow. Id. ¶ 98. When another Stewart employee asked Hale via email on April 13, 2015 about activity in the escrow, Hale replied, "we have disbursed $8,499,955.00 for them to date and they are sending us more to disburse." Dkt. 175-1, Ex. R. When the other employee responded, "[s]ounds like a real deal," Hale replied, "I don't know, pretty strange if you ask me." Id. Stewart claims these emails show only that Hale anticipated a closing, not that she was aware of a fraud. Dkt. 180 at 8. A reasonable jury could conclude that Stewart acted in a highly unorthodox manner in authorizing the disbursement of funds in light of all of these suspicious circumstances.

h. There are also fact issues regarding Stewart's awareness of suspicious circumstances regarding the disbursement of escrow funds to various entities who were not designated as sellers of the properties in question. As reflected in the ledger, Stewart paid the following amounts out of the escrow funds deposited by the Dromys, Sherr, LLC allegedly on behalf of the Dromys, and Peak 1031 Exchange, Inc., belonging to Silverlake: First Capital received $6,549,630.59, Alexandria Acquisitions and Development received $1,950,000, and three companies owned by Oren (Rasbe, Sherr, LLC, and Emmet, Inc.) received $1,200,000, $3,050,000, and $1,200,000, respectively. Dkt. 176 ¶ 83; dkt. 175, Ex. F; dkt. 175, Ex. D. Even though the transaction and escrow never closed, no funds were returned to the Dromys, DIICO, or Silverlake, and the Dromys did not learn for months that disbursements without a closing were made. Dkt. 176 ¶ 73. Hale was aware that VCV (through Alexandria Acquisitions and Development) received $1,950,000, which she had authorized to be disbursed. Id. ¶ 89. She was also aware that Rasbe was an associate of VCV's principal. Id. ¶ 84. Hale never asked anyone about these recipients' relationships to the transaction, which she testified would not be relevant to her. Id. ¶ 86-87. She also testified that despite knowing that the Buyer and companies associated with the Buyer received almost half of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:17-cv-03291-CAS-AGRx | Date | October 1, 2024 |
|---|---|---|---|
| Title | Silverlake Park LLC v. Stewart Title Guaranty Company | | |

sales proceeds from the escrow, she did not ask anyone why this disbursement was requested to be made or why the Buyer of the properties would be paid anything out of the escrowed funds. Id. ¶ 90-91.

## IV. CONCLUSION

On this record, there are disputed issues of fact regarding the performance of fiduciary duties owed by Stewart to Silverlake and whether Stewart was on notice of circumstances indicating that a fraud was taking place and whether it performed its duties as an escrow agent in a negligent manner. In accordance with the foregoing, the Court **DENIES** defendant's motion for summary judgment.

IT IS SO ORDERED.

|  | 00 : 00 |
|---|---|
| Initials of Preparer | CMJ |